UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ARTHUR CAFASSO, |  |
|---|---|
| Plaintiff, | No. 3:15-CV-920 (MPS) |
| v. |  |
| ROBERT NAPPE, |  |
| Defendant. |  |

## Ruling on Summary Judgment Motion

### I.    Introduction

Plaintiff, Arthur Cafasso, has sued Defendant, Robert Nappe, a former police officer of the East Haven Police Department, for malicious prosecution arising out of Officer Nappe's application for an arrest warrant charging Mr. Cafasso with animal cruelty after an altercation between Mr. Cafasso and Ms. Judy Lawson and her dog, Ralph. Officer Nappe has moved for summary judgment on Mr. Cafasso's malicious prosecution claim, arguing that the charge of animal cruelty was supported by probable cause. I agree and grant the motion.

### II.    Facts

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

#### A.    The June 10, 2014 Arrest of Mr. Cafasso

On June 10, 2014, Officer Nappe was dispatched to Whaler's Point, a neighborhood in East Haven, Connecticut, in response to a complaint by Ms. Judy Lawson that Mr. Cafasso had punched her in the face and kicked her dog, Ralph. (ECF No. 44-3 at 3.) Upon arriving at the scene, Officer Nappe saw that Ms. Lawson had "reddening [on] her left cheek" and that "her lip was slightly cut" but did not observe any injuries to Ralph. (ECF No. 44-3 at 3); *see also* Defendant's Local Rule Statement ("Def.'s L.R. 56(a)(1) Stmt."), ECF No. 44 at ¶ 3; Plaintiff's

1

Local Rule 56(a)(2) Statement ("Pl.'s L.R. 56(a)(2) Stmt."), ECF No. 48 at 2.)[1] Officer Nappe then interviewed both Ms. Lawson and Mr. Nappe. (ECF No. 44-3 at 3-4.) In her statement to Officer Nappe, Ms. Lawson claimed that she had been walking to the beach when Mr. Cafasso began "yelling at her to get off his property or he was going to let his dog out to attack her and her dogs." (*Id*. at 3.) Ms. Lawson told Officer Nappe that Mr. Cafasso "confronted her and kick[ed] [her] dog so that the dog would bite him so that he could sue her." (*Id*.) In his statement to Officer Nappe, Mr. Cafasso stated that while he had confronted Ms. Lawson for trespassing on his property, he never kicked Ralph, and Ralph had attacked him. (*Id*.) After interviewing both Ms. Lawson and Mr. Cafasso concerning the incident, Officer Nappe arrested Mr. Cafasso, charging him with one count of assault on an elderly person in the third degree. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 1; Pl.'s L.R. 56(a)(2) Stmt. at 2.)

> B. **Officer Nappe Learns of Ralph's Death and Signs an Affidavit in Support of an Application for an Arrest Warrant Charging Mr. Cafasso with Animal Cruelty**

Four days after Mr. Cafasso's arrest, on June 14, 2014, Ms. Lawson called Officer Nappe and informed him that Ralph had died. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 4; Pl.'s L.R. 56(a)(2) Stmt. at 2.) In her call, Ms. Lawson explained that she believed that Mr. Cafasso's kick caused Ralph's demise, though Ralph's "veterinarian could not directly relate the cause of death to the blunt force injury (bruise on [Ralph's] side) [that he] sustained during the incident" with Mr. Cafasso. (ECF No. 44-3 at 4.) Nonetheless, Ms. Lawson conveyed to Officer Nappe that she wished to bring charges against Mr. Cafasso. (*Id*.) After receiving Ms. Lawson's report, Officer

---

[1] I cite plaintiff's Local Rule Statement by ECF page number because plaintiff failed to comply with the requirement that he submit a "reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each numbered paragraph admitting or denying the fact and/or objecting to the fact as permitted by the Federal Rule of Civil Procedure 56(c)." D. Conn. L. R. Civ. P. 56(a)2.

2

Nappe requested an autopsy of Ralph by the Connecticut Veterinary Medical Diagnostic Lab (the "C.V.M.D.L.") (*Id.*) The C.V.M.D.L. report did not convulsively link Ralph's death to Mr. Cafasso's kick but did detail other injuries to Ralph, including injuries to his spleen. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 7; Pl.'s L.R. 56(a)(2) Stmt. at 2.) Thereafter, on July 9, 2014, Officer Nappe signed an application for an arrest warrant charging Mr. Cafasso with animal cruelty in violation of Conn. Gen. Stat. § 53-247(b). (Def.'s L.R. 56(a)(1) Stmt. at ¶ 8; Pl.'s L.R. 56(a)(2) Stmt. at 2; ECF No. 44-3 at 4.)

      **C.**      **Mr. Cafasso Enters into a Plea Agreement with the State to Satisfy his Criminal Liability Arising from the June 10, 2014 Incident with Ms. Lawson**

On August 4, 2014, the State of Connecticut filed a substitute information against Mr. Cafasso for breach of the peace in the second degree in violation of Conn. Gen. Stat. § 53a-181. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 10; Pl.'s L.R. 56(a)(2) Stmt. at 2.) In exchange for Mr. Cafasso's pleading guilty to the breach of peace charge and his agreement to comply with certain conditions, including no threats, harassment, or violence against Ms. Lawson and making a donation to the East Haven Animal Shelter (ECF No. 44-4 at 2), the State agreed that Mr. Cafasso's plea would resolve all charges and "all possible prosecutions" of him arising from the June 10, 2014 incident. (ECF No. 48 at 6; *see also* ECF No. 44-4 at 3, 11, 15.) Mr. Cafasso entered into that plea agreement and pled guilty under the *Alford* doctrine on August 4, 2014. (ECF No. 47 at 31; ECF No. 48 at 6.)

      **D.**      **Mr. Cafasso is Arrested for Animal Cruelty on October 31, 2014**

On October 26, 2014, state prosecutor Joseph LaMotta signed the arrest warrant application Officer Nappe had signed on July 9, 2014. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 14; Pl.'s L.R. 56(a)(2) Stmt. at 1.) Officer Nappe's affidavit set forth, among other things, that: (i) Ms. Lawson reported to Officer Nappe that Mr. Cafasso had kicked Ralph; (ii) Ms. Lawson reported

3

that her veterinarian observed a "blunt force injury (bruises on [Ralph's] side) sustained during the incident" with Mr. Cafasso; (iii) Ms. Lawson advised Officer Nappe that she believed that Mr. Cafasso's attack had killed Ralph; (iv) the C.V.M.D.L. report documented "injuries to the dog (Ralph), including injury to [Ralph's] spleen"; and (v) Ralph died four days after the incident with Mr. Cafasso. (ECF No. 44-3 at 4.) The affidavit also recited that Mr. Cafasso had already been arrested for assault on an elderly person on June 10, 2014, and that he had been summoned to appear in court on that charge. (*Id*.) Before signing the application, Attorney LaMotta amended the cover sheet to charge Mr. Cafasso with animal cruelty under Conn. Gen. Stat. § 53-247(a), the misdemeanor subsection of the statute, instead of Conn. Gen. Stat. § 53-247(b), one of the felony subsections.[2] (Def.'s L.R. 56(a)(1) Stmt. at ¶ 15; Pl.'s L.R. 56(a)(2) Stmt. at 2; ECF No. 44-3 at 1.) On October 28, 2014, two days after Attorney LaMotta signed the arrest warrant application, a Connecticut Superior Court Judge signed it, thereby authorizing Mr. Cafasso's arrest. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 16; Pl.'s L.R. 56(a)(2) Stmt. at 2.) On the basis of that arrest warrant, on October 31, 2014, East Haven Police arrested Mr. Cafasso at his home, arriving with a "large police presence" and "in full view of his neighbors." (ECF No. 48 at ¶ 19-20.) During his arrest, Mr. Cafasso explained to the officers that the charge for which he was being arrested had been resolved under the terms of his plea agreement with the State on August 4, 2014, but he was taken into custody anyway. (*Id*. at ¶¶ 20, 23.) One of the arresting officers informed him that Officer Nappe – who was apparently not present for the arrest – had

---

[2] The misdemeanor subsection reads in part "[a]ny person who…cruelly beats…or unjustifiably injures any animal…shall, for a first offense, be fined not more than one thousand dollars or imprisoned not more than one year or both, and for each subsequent offense, shall be guilty of a class D felony." The felony described in subsection (b) reads in part that "[a]ny person who maliciously and intentionally maims, mutilates, tortures, wounds or kills an animal shall, (1) for a first offense, be guilty of a class D felony…" Conn. Gen. Stat. § 53-247(b).

4

instructed them to take him into custody in the manner that they did, which the officer acknowledged was unusual. (*Id*. at ¶ 20.) Following several court appearances on the animal cruelty charge, on December 18, 2014, Attorney LaMotta, after reviewing the transcript of the August 4 plea colloquy, declined to prosecute the animal cruelty charge against Mr. Cafasso by entering a nolle prosequi. (Def.'s L.R. 56(a)(1) Stmt. at ¶ 18; Pl.'s L.R. 56(a)(2) Stmt. at 2.)

### E. The Amended Complaint

On September 8, 2015, Mr. Cafasso filed an amended complaint. (ECF No. 17.) The amended complaint alleges that "[t]his is an action for malicious prosecution against Officer Robert Nappe arising under the Fourth Amendment to the United States Constitution." (ECF No. 17 at ¶ 1.) In support of that claim, Mr. Cafasso alleges that he was charged with assault of an elderly person in violation of Conn. Gen. Stat. § 53a-61a. (*Id*. at ¶ 7.) In connection with that charge, he alleges that he entered into a plea agreement with the State that provided "if [he] pleaded to a lesser charge than assault, the [S]tate would not pursue either the assault charges or any potential animal cruelty charges." (*Id*. at ¶ 9.) He further alleges that, despite his plea agreement with the State, Officer Nappe "submitted an arrest warrant for [Mr. Cafasso] in late October 2014" and that the warrant intentionally omitted any reference to Mr. Cafasso's plea agreement with the State. (*Id*. at ¶¶ 13, 16.) According to the amended complaint, "[u]pon being shown a copy of the plea agreement, the [S]tate agreed to dismiss the new prosecution as it violated [] the plea agreement." (*Id*. at ¶ 18.) The amended complaint alleges that the state court judge would not have signed the warrant for Mr. Cafasso's arrest for animal cruelty had the disposition of his assault case been included in Officer Nappe's arrest warrant application, and that in the absence of the intentional acts and omissions of Officer Nappe, Mr. Cafasso would not have been prosecuted for animal cruelty. (*Id*. at ¶¶ 19, 20.)

5

### III. Applicable Legal Standards

#### A. Summary Judgment

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton,* 134 S.Ct. 1861, 1866 (2014)(internal quotation marks and citations omitted). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In determining whether summary judgment is appropriate, I must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

#### B. Malicious Prosecution

"[T]o prevail on a section 1983 claim for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)(internal quotation marks and citations omitted). Under Connecticut law, a malicious prosecution claim requires a plaintiff to prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to

justice." *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009).[3] The issue on this motion for summary judgment is whether Officer Nappe acted without probable cause.

For a malicious prosecution claim, the existence of probable cause is assessed in light of the facts known or reasonably believed at the time the criminal proceedings began, not at the time of arrest. *See Coll v. Boisvert*, 2014 WL 508694, at * 8 (D. Conn. Feb. 5, 2014)("Probable cause to prosecute is distinct from probable cause to arrest and is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest.")(internal quotation marks and citations omitted); *Lombardi v. Myers*, 2016 WL 4445939, at * 4 (D. Conn. Aug. 18, 2016)("In the context of a malicious prosecution claim, a plaintiff must show that the defendants lacked probable cause to prosecute, not just to arrest.")(internal quotation marks and citations omitted).

Probable cause is presumed when an arrest is made pursuant to a warrant issued by a neutral magistrate judge. *Walcyzk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.")(internal quotation marks and citations omitted); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)(noting, in qualified immunity analysis, that "[n]ormally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden")(internal quotation marks and citations omitted). A plaintiff may overcome that

---

[3] The defendant does not dispute that Mr. Cafasso's arrest and subsequent prosecution involved a "seizure" sufficient to satisfy the Fourth Amendment. *See Murphy v. Lynn*, 118 F.3d 938, 944 (2d. Cir. 1997).

presumption either by "mak[ing] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause," *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993)(internal quotation marks and citations omitted), or by showing that the arrest warrant was facially invalid, i.e., that the officer did not reasonably rely on the judge's probable cause determination. *See U.S. v. Leon*, 468 U.S. 897, 923 (1984)("The [good faith] exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role…, in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.")(internal citations and quotation marks omitted); *see also Simms v. Village of Albion, N.Y.*, 115 F.3d 1098, 1006 (2d Cir. 1997)(An "officer's reliance on the magistrate's probable-cause determination on the technical sufficiency of the [arrest] warrant must be objectively reasonable.")(internal quotation marks and citations omitted).

**IV.    Discussion**

In this case, Officer Nappe is entitled to summary judgment on Mr. Cafasso's malicious prosecution claim because Mr. Cafasso has failed to raise a genuine factual dispute as to whether probable cause existed at the time the criminal proceedings began against him by virtue of an arrest warrant signed by a state court judge. Mr. Cafasso makes two sets of arguments in an attempt to raise genuine disputes of material fact to resist summary judgment. I examine each below.

### A. Probable Cause to Support Injury to Dog

Mr. Cafasso argues that summary judgment is improper because there was not probable cause to charge him with animal cruelty under Conn. Gen. Stat. § 53-247(b), one of the felony subsections of the animal cruelty statute. The premise of that argument is mistaken, however, because Mr. Cafasso was charged under Conn. Gen. Stat. § 53-247(a), the misdemeanor subsection, not subsection (b). (ECF No. 44-3 at 1.) Although Officer Nappe's affidavit set forth why he believed there was probable cause to arrest and prosecute Mr. Cafasso for a felony violation of subsection (b), Mr. Cafasso was not prosecuted under that provision due to a change made by the prosecutor in the warrant application before it was submitted to the judge. (ECF No. 44-5 at 17.) Indeed, he was not even arrested for a violation of subsection (b); the judge signed the corrected arrest warrant, which alleged a violation of subsection (a), and the arrest was made based on the warrant signed by the judge. (*Id*. at 17-18; ECF No. 17 at ¶¶ 13-14; ECF No. 48 at ¶ 19.) To prevail on his claim for malicious prosecution, Mr. Cafasso must show there was a lack of probable cause to support the charge for which he was actually haled into court, i.e., Section 53-247(a). *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d. Cir. 1995)(Malicious prosecution claims under the Fourth Amendment protect against "deprivation[s] of liberty…[that] have been effected pursuant to legal process. The essence of malicious prosecution is the perversion of proper legal procedures.")(internal quotation marks and citations omitted); *Rosado v. New York City Hous. Auth.*, 827 F. Supp. 179, 182 (S.D.N.Y. 1989)("The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation.")(internal quotation marks and citations omitted). Put differently, Officer Nappe's initial application to charge Mr. Cafasso with a felony caused Mr. Cafasso no harm, because the State bought only the misdemeanor charge. *See Rodgers v. Knight*, 781 F.3d 932, 939 (8th Cir.

9

2015)("Insofar as Greg alleged a malicious prosecution claim against police officers based on the filing of the concealed weapons charge, he has not demonstrated any damages arising from that action" because "[p]rosecutors eventually amended the charge to allege unlawful possession as a fugitive from justice, and Greg was not tried on the concealed weapons allegation.")(internal quotation marks and citations omitted). The inquiry is thus whether Mr. Cafasso has raised a genuine factual dispute about whether there was probable cause that he "cruelly beat[]" or "unjustifiably injur[ed]" an animal in violation of subsection (a). Conn. Gen. Stat. § 53-247(a).[4]

That inquiry begins with a presumption of probable cause because a judge signed the arrest warrant that initiated the prosecution. *See Golino*, 950 F.2d at 870. Mr. Cafasso has failed to overcome that presumption by showing, as he must, either (i) the intentional inclusion of false statements in Officer Nappe's affidavit or deliberate or reckless material omissions, or (ii) that the affidavit on its face failed to set forth facts supporting probable cause.

First, Mr. Cafasso points to no evidence in the record that the statements in the arrest warrant affidavit were false or that material information was knowingly or recklessly omitted from the affidavit. Mr. Cafasso does not identify (nor is there any evidence in the record suggesting) a single false statement that Officer Nappe included in his affidavit. He also fails to identify any knowingly or recklessly omitted material information from the arrest warrant – an argument that Officer Nappe preemptively raised in his brief (ECF No. 43-1 at 5-6) but that Mr. Cafasso failed to address in his, despite that his amended complaint is based on the theory that Officer Nappe deliberately omitted material information from his affidavit. (ECF No. 17 at ¶ 13.) Thus, that theory has been abandoned. *See, e.g.*, *NML Capital, Ltd. v. Republic of*

---

[4] Nonetheless, as discussed below, the affidavit also would have supported a finding of probable cause under the felony subsection of the animal cruelty statute specified in Officer Nappe's affidavit.

10

*Argentina*, 05 CIV. 2434, 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009)(holding that party waived argument by failing to address it in opposition to motion for summary judgment). In any event, Mr. Cafasso has failed to point to evidence in the record that Officer Nappe intentionally omitted material information.[5] Accordingly, Mr. Cafasso has failed to overcome the probable cause presumption by showing Officer Nappe intentionally or recklessly made false statements or material omissions in the arrest warrant affidavit.[6]

Second, Mr. Cafasso has failed to raise a genuine factual dispute about whether the affidavit was facially invalid. To show facial invalidity, Mr. Cafasso must demonstrate that it was not objectively reasonable for Officer Nappe to rely upon the judge's determination of probable cause. *Simms*, 115 F.3d at 1106 (An "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the [arrest] warrant…must be objectively reasonable.")(internal quotation marks and citations omitted). The "inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrant[] [was] illegal despite the magistrate's authorization." *Id.* (internal quotation marks and citations omitted). Even after drawing all inferences in favor of Mr. Cafasso, I find no evidence in the record that would satisfy that standard. To the contrary, the facts recounted in the arrest warrant affidavit are adequate to support probable cause to charge Mr. Cafasso under Conn. Gen. Stat. § 53-247(a). Specifically, the affidavit sets forth, among other things, that: (i) Ms. Lawson

---

[5] Nor, as discussed further below, does Mr. Cafasso point to any evidence that Officer Nappe later learned that there were any material omissions in his affidavit – either after he submitted it or at any time before the animal cruelty charge was brought against Mr. Cafasso.
[6] Although he does not make this argument, Mr. Cafasso's later assertion that Officer Nappe conducted an inadequate investigation, which is discussed below, would not overcome the presumption either. *Cf. Romney v. Black Castle*, 2017 WL 1317011, at *9 (E.D.N.Y. Mar. 31, 2017)("[A] failure to adequately investigate cannot rebut the presumption of probable cause [created by an indictment returned by a grand jury].")(internal quotation marks and citations omitted).

reported to Officer Nappe that Mr. Cafasso had kicked Ralph for the purpose of provoking Ralph to attack him; (ii) Ms. Lawson reported that her veterinarian observed a "blunt force injury (bruises on [Ralph's] side) sustained during the incident" with Mr. Cafasso; (iii) Ms. Lawson advised Officer Nappe that she believed that Mr. Cafasso's attack had killed Ralph; (iv) the C.V.M.D.L. report documented "injuries to the dog (Ralph), including injury to [Ralph's] spleen"; and (v) Ralph died four days after the incident with Mr. Cafasso. (ECF No. 44-3 at 4.) This is more than enough for probable cause to charge Mr. Cafasso with "cruelly beat[ing]"or "unjustifiably injur[ing]" an animal. Conn. Gen. Stat. § 53-247(a).

      The affidavit would also support probable cause for the felony charge for violation of Section 53-247(b) that Officer Nappe included in the arrest warrant application, although the prosecutor later reduced that charge when he signed the application and submitted it to the judge. The affidavit states that Ms. Lawson, an eyewitness, told Officer Nappe that Mr. Cafasso had kicked Ralph to provoke Ralph to bite him so that he could sue Ms. Lawson. (ECF No. 44-3 at 3)("[Ms. Lawson] stated that [Mr. Cafasso had] stated he kicked [Ralph] so [Ralph] would bite him so he could sue her.") Further, as noted, Ms. Lawson reported that her veterinarian reported a "blunt force injury (bruise to Ralph's side) sustained during the incident" and, as discussed below, Dr. Burns of the C.V.M.D.L. referred in her oral report to Officer Nappe to "injuries from the assault on the dog," although she could not conclusively link those injuries to the dog's death. (ECF No. 44-3 at 4.) This is adequate to find probable cause that Mr. Cafasso had "maliciously and intentionally…wound[ed]" an animal. Conn. Gen. Stat. § 53-247(b).

      Mr. Cafasso has not presented evidence that there was any reason for Officer Nappe to doubt any of the statements on which he relied in preparing the arrest warrant application, including the statements by Ms. Lawson and Dr. Burns, the author of the C.V.M.D.L. report.

12

*See Johnson v. Fallon*, 2009 WL 513733, at *4 (D. Conn. Feb. 10, 2009)("It is well-established that statements of a victim or eye-witness to an alleged crime constitute probable cause unless there are reasons to doubt the veracity of such sources.")(internal quotation marks and citations omitted). Moreover, Officer Nappe's June 10 observation that he did not see any injuries to Ralph did not negate probable cause in light of the evidence discussed above, and particularly, the later report from Dr. Burns of "injuries from the assault on the dog." (ECF No. 44-3 at 4.)

Mr. Cafasso asserts that because the necropsy report showed that "the differential diagnosis for splenic mass includes hemangiosarcoma, hemangioma and hematoma" and that "microscopic examination is required to distinguish between [those] possibilities, and the clinical significance is not yet known," there was no evidence to suggest that he injured Ralph or that any trauma had occurred. (ECF No. 47 at 10.) But Officer Nappe had other reliable information that Mr. Cafasso did injure Ralph. According to the affidavit, Dr. Burns also provided Officer Nappe an oral report in which she "stated that her final report will not conclusively relate the *injuries from the assault on the dog* (Ralph) to his death." (ECF No. 44-3 at 4)(emphasis added.) Neither the misdemeanor set forth in subsection (a) nor the felony set forth in subsection (b) required the State to prove that Mr. Cafasso's assault on the dog caused his death. Dr. Burns's oral report, together with the information from Ms. Lawson, was enough to support probable cause that Mr. Cafasso had "unjustifiably injured" or "maliciously wounded" Ralph.

Next, Mr. Cafasso argues that Attorney LaMotta's decision to charge Mr. Cafasso under the misdemeanor, not the felony, subsection of the animal cruelty statute showed "[t]here was never evidence to support any [] accusations" of the charge filed by Officer Nappe. (ECF No. 47 at 6.) At his deposition, however, Attorney LaMotta explained his decision to amend the charge was not for want of evidence – much less lack of probable cause – but because he was concerned

with whether he could prove beyond a reasonable doubt that Mr. Cafasso's kick caused Ralph's death.[7] (ECF No. 44-5 at 30-31.) But whether the State could successfully prosecute Mr. Cafasso for animal cruelty is immaterial in assessing whether there was probable cause for the prosecution. *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989)("It bears repeating that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful.")(internal quotation marks and citations omitted).

### B. Adequacy of Officer Nappe's Investigation

Mr. Cafasso next argues that there is an issue of material fact concerning the adequacy of Officer's Nappe's investigation into both his initial arrest for the assault on Ms. Lawson, and later, for the animal cruelty charge. (ECF No. 47 at 3.) Specifically, he asserts Office Nappe's investigation was deficient because (i) Officer Nappe did not take a statement from Mr. Cafasso's neighbor, Mr. Joseph Barnabei, "an eyewitness [who, according to Mr. Cafasso,]

---

[7] Attorney LaMotta's deposition transcript reads in part:

> [Plaintiff's Counsel]: You determined based on what you were given that establishing causation beyond a reasonable doubt would have been impossible based on the medical evidence, the veterinary evidence you had?
>
> [Attorney LaMotta]: I would say that the totality of what I looked at caused me to change that charge from the charge that reflected that his acts caused the animal's death to one that reflected the mere fact that the acts occurred.
>
> [Plaintiff's Counsel]: And that was the change from the felony to the misdemeanor?
>
> [Attorney LaMotta]: Yes.
>
> [Plaintiff's Counsel]: So at that point you still thought you could prove a misdemeanor case?
>
> [Attorney LaMotta]: Yes.

(ECF No. 44-5 at 30-31.)

denied the assault [of Ms. Lawson] had occurred" and (ii) Officer Nappe failed to stay abreast of the status of the assault charge against Mr. Cafasso. (*Id*. at 5-6.) But these omissions do not create a genuine dispute about whether there was probable cause to arrest or initiate charges.

As a general matter, during an investigation into an alleged crime, an arresting officer is not "obligated to pursue every lead or engage in extensive fact-finding that may yield evidence beneficial to the accused." *Tyus v. Newton*, 2015 WL 5306550, at * 8 (D. Conn. Sept. 10, 2015)(internal quotation marks and citations omitted). Accordingly, an officer has no duty to investigate exculpatory defenses. *Lundt v. City of New York*, 2013 WL 5298458, at *3 (E.D.N.Y. Sept. 20, 2013)("An arresting officer has no duty to investigate exculpatory defenses.")(internal quotation marks and citations omitted); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 791 (E.D.N.Y. 2012)("[T]he police have no obligation to investigate a defendant's alibi and any failure to do so would not have vitiated the existence of probable cause.")(internal quotation marks and citations omitted).

Mr. Cafasso urges me to apply an exception to this rule that the Second Circuit has recognized in cases involving prolonged detentions. In that context, the Second Circuit has held that an officer has a "duty to investigate specific, readily-verifiable claims of innocence in a reasonable time period…" *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007)(internal quotation marks and citations omitted). But the Second Circuit has not extended *Russo* beyond the context of cases involving "*sustained detention* stemming directly from [] law enforcement officials' refusal to investigate exculpatory evidence." *Id*. (emphasis added); *see Jackson v. City of New York*, 29 F. Supp. 3d 161, 179 (E.D.N.Y. 2014)(noting that "*Russo* has been narrowly construed to involve situations where a law enforcement official has mishandled or suppressed readily available exculpatory evidence, which resulted in the plaintiff's

15

unreasonably long incarceration.")(internal quotation marks and citations omitted); *Husbands ex. Rel. Forde v. City of New York*, 2009 WL 1868546, at * 4 (2d Cir. June 30, 2009)(observing *Russo* was inapplicable because the plaintiff "was not subjected to a lengthy pretrial detention…")(internal quotation marks and citations omitted); *Thompson v. City of New York*, 603 F. Supp. 2d 650, 656 (S.D.N.Y. 2009)(noting the officer's duty to "investigate exculpatory evidence that might [] establish[] [a plaintiff's innocence]" arises in cases where a plaintiff claims prolonged detention)(internal quotation marks, citations, alterations omitted).

A claim of unreasonably prolonged detention under *Russo* also involves two additional requirements. First, a plaintiff must show his claim of innocence is "readily-verifiable." In *Russo*, the Second Circuit found that standard met where the exculpatory evidence was "easily available" because it was in the defendants' possession. *Russo*, 479 F.3d at 209 (describing that plaintiff's claims of innocence were readily verifiable because of the "ease with which the evidence exculpating Russo—which was in the officers' possession—could have been checked"). Second, for *Russo* to apply, the evidence must conclusively or affirmatively establish the plaintiff's innocence. *See King v. City of New York*, 2014 WL 4954621, at * 29 (E.D.N.Y. Sept. 30, 2014)(stressing that the "exculpatory evidence must have conclusively or affirmatively established [the plaintiff's] innocence")(internal quotation marks and citations omitted)(citing cases); *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 402 (E.D.N.Y. 2014)(because "there was no objective, readily-verifiable, exculpatory evidence in [defendant's] possession that would have established [plaintiff's] innocence," plaintiff could not sustain his claim that defendant violated his duty to investigate readily-verifiable exculpatory evidence)(internal quotation marks and citations omitted).

The rationale of *Russo* does not apply here.  First, this is the wrong context: Mr. Cafasso claims malicious prosecution, not prolonged detention, and there is nothing in the record suggesting that Mr. Cafasso was detained after his arrest.  This distinction is not a technical one: detention is a more severe restriction of one's liberty than arrest or prosecution, *Russo*, 479 F.3d at 209, and thus warrants imposing additional investigative burdens on the police.  Second, there is no evidence that Officer Nappe possessed or knew of any exculpatory evidence, including Mr. Barnabei's statement or the August 4 plea agreement, when the prosecution was initiated.[8]  As for Mr. Barnabei, the record does not suggest that Officer Nappe was ever aware that Mr. Barnabei was an eyewitness to the altercation between Mr. Cafasso and Ms. Lawson, or that anyone, including Mr. Cafasso, identified Mr. Barnabei as such.  Further, there is no evidence in the record to support the inference that Mr. Barnabei was on the scene after Officer Nappe and other officers arrived such that he would have been easily identifiable as an eyewitness.

As for the plea agreement, the record is clear that (i) Officer Nappe did not know about the disposition of Mr. Cafasso's assault charge against Ms. Lawson (ECF No. 44-1 at 54); (ii) Officer Nappe did not seek to learn about the disposition of Mr. Cafasso's assault charge (*id*); (iii) Officer Nappe did not communicate with Attorney LaMotta concerning the charge (ECF No. 44-5 at 18-19, 37-38); and (iv) it was "normal course" that prosecutors would not communicate with the police officer(s) whose affidavit(s) supported the arrest warrant.  (*Id*. at 41.)  Mr.

---

[8] Although Mr. Cafasso states in his affidavit that he "attempted to convey to the arresting officers" on October 31, 2014 that he "had already been discharged for the June 10 incident" and "they (and [Officer Nappe], who caused the arrest) clearly had the ability to check the truth of [his] assertion," (ECF No. 48 at 9), there is no evidence that this information was conveyed to Officer Nappe, who, as far as the record discloses, was not present for the October 31 arrest.

17

Cafasso does not point to any evidence that Officer Nappe learned of the August 4 disposition at any time before the animal cruelty charge was brought against Mr. Cafasso.[9]

Nonetheless, Mr. Cafasso contends that Officer Nappe could have "easily" called the State's Attorney's Office to learn of the case's disposition. (ECF No. 47 at 7.) But that assertion assumes that a police officer who provided a warrant affidavit would ordinarily follow the ensuing prosecution and thus would know when the defendant was scheduled to appear in court and when to call the prosecutor to inquire about a disposition. There is nothing in the record to suggest that Officer Nappe was following the case or that other officers typically followed cases initiated by their arrests, and Mr. Cafasso has cited no authority suggesting that police officers are required to do so. Further, the notion that, after making an arrest, an officer must follow each ensuing prosecution and inquire of the prosecutor about any disposition of charges after each court appearance by a defendant before initiating new charges against the same defendant goes well beyond the limited duty imposed by *Russo* (in a different context) to examine "easily available" evidence in the officer's possession. 479 F.3d at 209. Although I agree that the criminal justice system failed Mr. Cafasso in this case, there is no basis in the record to saddle Officer Nappe with malicious prosecution liability for that failure.

V. **Conclusion**

For the reasons set forth above, Officer Nappe's motion for summary judgment is granted. Accordingly, the Clerk is directed to close the case.

---

[9] The prosecutor testified that, in his best recollection, he did not communicate with Officer Nappe regarding the warrant, the charge, or any other topic. (ECF No. 44-5 at 18-19.) Officer Nappe testified that he did not recall communicating with the prosecutor, and that it would not be "the course of business" for him to learn the disposition of the charges. (ECF No. 44-1 at 54.)

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 20, 2017